**Tagged Opinion**



**ORDERED in the Southern District of Florida on December 30, 2008.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

```
_____ )
                                )
In re:                          )  CASE NO.  08-20483-BKC-RAM
                                )  CHAPTER   13
ALBERTO PLACIDO BECQUER,        )
                                )
                                )
          Debtor.               )
                                )
_____ )
                                )
In re:                          )  CASE NO.  08-18544-BKC-RAM
                                )  CHAPTER   13
RAVINDRA R. KANDUKURI,          )
                                )
          Debtor.               )
_____ )
```

**ORDER SUSTAINING ECAST'S**
**OBJECTIONS TO CONFIRMATION**

The objections to confirmation filed by an unsecured creditor in these Chapter 13 cases raise two issues already the subject of numerous published decisions reaching opposite results. First, is "projected disposable income" under §1325(b)(1)(B) of the Bankruptcy Code simply the "disposable

income" calculated in the Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") multiplied by the number of months of the plan, often referred to as the mechanical approach? Or, should "projected disposable income" be calculated based on the actual income a debtor is expected to receive during the plan period, often called the forward looking approach?

Second, if the Court adopts the forward looking approach for calculating "projected disposable income," may the debtor deduct the expenses reflected in Schedule J, or is the debtor limited to the Form B22C expenses described in §707(b)(2)(A) and (B)?

After review of the numerous published opinions on these issues, the Court concludes that (1) "projected disposable income" contemplates a forward look; and (2) in calculating "projected disposable income," the expenses should be calculated as of confirmation, but the debtor is required by §1325(b)(3) to calculate the expenses under the standards proscribed in §707(b)(2).

**Factual and Procedural Background**

The Court consolidated for hearing the similar objections filed by eCast Settlement Corporation ("eCast") to the Chapter 13 plans filed by each of the above-styled debtors. In both cases, the debtor's actual income when the case was filed was higher than the income reflected in Form B22C. A brief summary of the facts follows:

**A.   Debtor Ravindra R. Kandukuri**

Ravindra R. Kandukuri ("Kandukuri") filed his Chapter 13 case on June 24, 2008.  eCast is the holder of an unsecured claim.  Kandukuri's Form B22C calculation reflects average gross income in the six months prior to filing of $3,492.98, and disposable income of minus $431.37.  Kandukuri's Schedule I, however, reports gross monthly income of $6,645.38.  His Schedule I income is nearly double his Form B22C income, because he was only employed for about 3 months prior to the filing.  Kandukuri's Chapter 13 Plan proposes monthly payments of $390.00 for 60 months.

eCast filed its Objection to Confirmation on August 19, 2008 [CP# 23].  eCast argues that the plan fails to apply all of the Debtor's projected disposable income to unsecured creditors.  eCast argues that where, as in this case, current monthly income calculated in Form B22C does not accurately reflect reasonably anticipated income, the actual postpetition income listed in Schedule I should be used in the calculation.

eCast also argues that the expenses to be used in calculating projected disposable income are limited to those allowed under the "means test," that is, the expenses described in §707(b)(2)(A) and (B).  Under this methodology, eCast argues that Kandukuri's monthly projected disposable income is $2,448.93, calculated by subtracting his Form B22C expenses of

3

$4,196.45 [1] from his Schedule I income of $6,645.38.

### B. Debtor Alberto Placido Becquer

Alberto Placido Becquer ("Becquer") filed his Chapter 13 case on July 28, 2008. eCast is the holder of an unsecured claim. Becquer's Form B22C calculation reflects monthly income of $8,358.00 and expenses of $9,709.00, yielding disposable income of minus $1,351.00. His Schedule I, however, reports monthly gross income of $11,931.00. The difference in income between Becquer's Form B22C and Schedule I is attributable to the debtor's wife's income. The Debtor and his wife were married on June 6, 2008, about seven weeks before he filed this case. Her gross income on Schedule I is $3,200/month. Her six month average in Form B22C was only $600.00 because the Debtor only included the income earned after their marriage. Becquer's Chapter 13 Plan proposes monthly payments of $340.00.

eCast filed its Objection to Confirmation on September 15, 2008 [CP# 23]. eCast's legal arguments mirror those argued in the Kandukuri case. Applying its arguments to the facts, eCast argues that Becquer's projected disposable income for plan purposes is Schedule I income of $11,931.00 minus means test expenses of $9,709.00, yielding monthly projected disposable income of $2,222.00.

---

[1] Debtor calculated his means test expenses at $3,924.35, but failed to include the Chapter 13 Trustee's administrative expense. eCast estimated this expense at $272.10, resulting in this higher number.

**Discussion**

### A. This Court Adopts the Forward Looking Interpretation of Projected Disposable Income

There are presently two circuit court decisions, and at least two bankruptcy appellate panel decisions, adopting the forward looking approach: In re Lanning, 545 F.3d 1269 (10th Cir. 2008); In re Frederickson, 545 F.3d 652 (8th Cir. 2008); In re Petro, 395 B.R. 369 (6th Cir. BAP 2008); Kibbe v. Sumski, 361 B.R. 302 (1st Cir. BAP 2007); Numerous lower courts, including Chief Judge Hyman of our court, have also adopted this approach. In re Raulerson, 395 B.R. 157 (Bankr. M.D.Fla. 2008) (Judge Funk); In re Liverman, 383 B.R. 604 (Bankr. D.N.J. 2008); In re Hughey, 380 B.R. 102 (Bankr. S.D.Fla. 2007)(Chief Judge Hyman); In re Arsenault, 370 B.R. 845, 852 (Bankr. M.D.Fla. 2007) (Judge Williamson); In re LaPlana, 363 B.R. 259, 266 (Bankr. M.D.Fla. 2007) (Judge Jennemann); In re Grady, 343 B.R. 747 (Bankr. N.D.Ga. 2006); In re Hardacre, 338 B.R. 718 (Bankr.N.D.Tex. 2006).

Other courts, including one circuit court and Judge Olson of our court, have adopted the mechanical approach, calculating projected disposable income solely by using the six month look-back numbers in Form B22C. In re Kagenveama, 541 F.3d 868 (9th Cir. 2008); Musselman v. eCast Settlement Corporation, 394 B.R. 801 (E.D.N.C. 2008); In re Neclerio, 393 B.R. 784 (Bankr. S.D.Fla. 2008) (Judge Olson); In re Hanks, 362 B.R. 494 (Bankr. D.Utah 2007); In re Ferrar-Johnson, 353 B.R. 224, 228 (Bankr.

5

N.D.Ill. 2006); In re Guzman, 345 B.R. 640 (Bankr. E.D.Wis. 2006); and In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

This Court agrees with the forward looking approach for two reasons. First, while there are arguable flaws in each side's statutory interpretation, the Court finds fewer problems with the forward looking interpretation. As summarized by the 10th Circuit in its recent Lanning opinion, the mechanical approach gives little or no weight to certain statutory phrases. See Lanning, 545 F.3d at 1279. For instance, 1325(b) uses the phrase "as of the effective date of the plan." Determining whether a debtor is using all of his or her projected disposable income "as of the effective date of the plan" implies a forward look at actual financial circumstances at confirmation, when the plan becomes effective. Id. Similarly, the phrase income "to be received in the applicable commitment period" suggests a forward looking approach. Finally, the ordinary meaning of the word "projected," namely, calculating or estimating something in the future, lends further support to the forward looking approach. See Arsenault, 370 B.R. at 850.

Second, if there are two plausible ways to interpret the statute, then it is permissible to look at legislative history, logic, and fairness. Legislative history under BAPCPA is often sparse, but as several courts have noted, it is clear that Congress intended "to ensure that debtors repay creditors the maximum they can afford." H.R.Rep. No. 019-31, Pt. 1, at 2

6

(2005) U.S. Code Cong. & Admin. News 2005, pp 88-89; cited in Petro, 345 B.R. at 376; Arsenault, 370 B.R. at 850.  In both cases subject of this Order, where the debtors have actual postpetition income significantly higher than their Form B22C historical income, Congressional intent would be thwarted by allowing them to base their plan on the lower, historical amount. See In re Petro, 395 B.R. at 376 ("The mechanical approach ignores the policy behind the Amendments ... and the remedial nature of the code, generally.").

The forward looking approach also makes sense and avoids an unjust result to a debtor whose prepetition income is higher than his or her actual postpetition income.  If such a debtor is required to make plan payments beyond his or her actual means, the required plan would not be feasible.  Id; see also Lanning, 545 F.3d at 1281-82 (noting that the mechanical approach "would effectively foreclose bankruptcy protection to debtors like Ms. Lanning, who lack adequate [postpetition] income ... to pay the amount of disposable income on Form B22C"); Grady, 343 B.R. at 752 ("It is not logical for BAPCPA to limit a debtor to a plan based upon disposable income averaged over the six months preceding the petition date, when the debtor's financial condition is dramatically different at the time of confirmation.").

Thus, this Court adopts the forward looking approach.  The disposable income calculation derived from Form B22C is the

7

starting point, and "projected disposable income under §1325(b)(1)(B) will match disposable income under §1325(b)(2), if the debtor's income and expenses remain consistent from a date six months prior to filing through the effective date." In re Thomas, 395 B.R. 914, 923 (6th Cir. BAP 2008). However, the presumptive use of the disposable income calculation may be rebutted if, as in these two cases, the historic six month prepetition average is not a realistic basis for projecting the actual income the debtor will receive during the term of the plan. Arsenault, 370 B.R. at 847.[2]

### B. Means Test Expenses, Not Schedule J Expenses Must be Used in Calculating Projected Disposable Income for the Above Median Debtors

The expense issue has also generated conflicting opinions amongst the courts which have adopted the forward looking approach. The focus here is the language in §1325(b)(3) which

---

[2] This Court adopts Judge Williamson's formulation in Arsenault rather than the standard set out in cases like Lanning. In that case, the 10th Circuit held that the Form B22C income is the presumptive basis for calculating projected disposable income subject to a showing of a "substantial change in circumstances." This Court finds that standard to be too subjective and restrictive. The Kandukuri facts here demonstrate the point. Kandukuri was unemployed six months prior to filing. He was hired about three (3) months before filing his petition and remains at that job postpetition. Arguably, this is not a substantial change in circumstances. Yet, this Court is requiring him to use his Schedule I income in calculating projected disposable income since it is a more realistic basis for projecting his actual income than his Form B22C calculation.

defines the phrase "less amounts reasonably necessary to be expended" in §1325(b)(2) for above median debtors as the expenses determined under §707(b)(2)(A) and (B), often called the "means test expenses."  Some courts have concluded that the means test expense directive in §1322(b)(3) only applies to the definition of "disposable income" in §1322(b)(2).  Thus, once a court adopts the forward looking approach and finds that "projected disposable income" under §1322(b)(1)(B) is a different creature than "disposable income" in §1322(b)(2), it is no longer bound to use the means test expenses in the calculation.  See e.g. In re Liverman, 383 B.R. 604, 611 (Bankr. D.N.J. 2008); In re Slusher, 359 B.R. 290, 299 (Bankr. D.Nev. 2007).  These courts also find it anomalous to use Schedule I for the income side and not Schedule J for determining allowable expenses.  Liverman, 383 B.R. at 612.

This Court rejects that approach and instead agrees with the courts which have required debtors to use the means test expenses provided in §707(b)(2) rather than the expenses listed in Schedule J.  See e.g. Raulerson, 359 B.R. at 161-62; Arsenault, 370 B.R. at 851-52; and Hughey 380 B.R. at 106.  It may seem logical to use Schedule J on the expense side if you are using Schedule I on the income side.  However, it is not that simple.  As discussed earlier, the statutory phrase "projected disposable income" is riddled with ambiguity.  By contrast, the statute is unambiguous on the expense side.  Although §1322(b)(3) refers to

9

§1322(b)(2), not (b)(1), "it is clear that Congress, on the deduction side, meant to take away all judicial discretion in the specific deduction areas set forth in §707(b)(2)(A) and (B) and in those areas in which the Internal Revenue Service standards apply." Arsenault at 852, citing In re Barr, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

This Court recognizes that Schedule J expenses may be more realistic and those courts adopting the forward looking approach have certainly embraced realism on the income side. Indeed, using means test expenses will result in some debtors still being forced to pay more than they can actually afford and others getting a windfall, a result the forward looking courts seek to avoid. Still, this Court finds no way to avoid the problem. Unlike, on the income side, on the expense side courts simply have no discretion to substitute actual expenses for the national standards mandated by Congress.

Limiting a debtor to the expenses allowed under §707(b)(2) does not necessarily mean utilizing the initially filed Form B22C expenses in calculating "projected disposable income." As with income, temporal adjustments should also be made on the expense side where circumstances are different at confirmation than they were in the six month period prior to filing. The statute, however, mandates that these adjustments be made under the strictures of §707(b)(2). For example, Kandukuri's Form B22C deductions appear to include only his six month average for items

10

such as taxes on line 30.  Kandukuri is entitled to recalculate his Form B22C expenses to reflect his actual payroll tax deductions.  Similarly, Becquer's Form B22C expenses do not actually reflect all allowable deductions under the postpetition circumstances.  For example, this Order requires Becquer to include his wife's actual monthly gross income on the income side of the projected disposable income calculation.  Therefore, on the expense side, he should be permitted to include her actual payroll tax deductions in that line item of an amended Form B22C, not the smaller six month average deduction reflected in the original Form B22C.

In sum, the Court concludes that the means test expenses, as determined under §707(b)(2)(A) and (B), must be used in calculating projected disposable income for above median debtors.  The expenses, where necessary, should be recalculated as of the date of confirmation.  Moreover, if the expenses change during the life of the plan, the debtors may seek to modify their plans under §1329.  However, the expense calculation must always be derived using Form B22C, the national standards unambiguously imposed by Congress.  See Arsenault, 370 B.R. at 852, n.6.

For the foregoing reasons, it is -

**ORDERED** as follows:

1.   eCast's Objection to Confirmation of Kandukuri's plan and its Objection to Confirmation of Bequer's plan are sustained in part.  The Debtors must calculate their projected income using

11

their actual gross postpetition income less expenses and deductions allowable under §707(b)(2).  Both the income and expense component should be based on the facts existing at confirmation.

    2.   No later than January 26, 2009, Kandukuri and Becquer shall file Amended Plans consistent with this Order.

    3.   Confirmation hearings on the Amended Plans will be conducted on February 10, 2009, at 9:00 a.m.

###

COPIES TO:

Martin L. Sandler, Esq.
SANDLER & SANDLER
P.O. Box 402727
Miami Beach, FL 33140
(Counsel for eCast)

Samir Masri, Esq.
901 Ponce de Leon Blvd., Suite 303
Coral Gables, FL 33l34
(Counsel for Becquer)

Richard J. Adams, Esq.
900 W. 49th Street, Suite 514
Hialeah, FL 33012
(Counsel for Kandukuri)

James W. Schwitalla, Esq.
12954 S.W. 133rd Court - Park Place II
Miami, FL 33186
(Special counsel for Kandukuri)